United States District Court
Southern District of Texas
**ENTERED**
October 17, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MAUDE SOLOMON, | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:19–CV–00152 |
| CROWLEY MARITIME CORPORATION, ET AL., | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant Crowley Maritime Corporation's Motion to Dismiss Pursuant to Rule 12(b)(2) and 12(b)(5) and Defendants, Intrepid Personnel and Provisioning, Inc., Intrepid Ship Management, Inc. and Vessel Management Services, Inc.'s, Motion to Dismiss Pursuant to Rule 12(b)(2) ("Motion to Dismiss"). *See* Dkt. 19. After careful consideration of the motion, responses, and applicable law, I **RECOMMEND** that the Motion to Dismiss (Dkt. 19) be **GRANTED**.

### BACKGROUND

This lawsuit arises from a maritime personal injury. Plaintiff Maude Solomon ("Solomon") was a cook and crew member of the vessel, Resolve, an articulated tug and barge (the "ATB Resolve"). *See* Dkt. 11 at 3. In September 2018, while working aboard the ATB Resolve in the navigable waters near the coast of South Carolina, Solomon's "foot became caught on missing and/or loose grating, causing her to slip and fall backwards. As

a result of the occurrence, [she] sustained serious and debilitating injuries to her neck, head, and back, among other parts of her body." *Id.*

Based on her injuries, Solomon filed this suit against her employers—Intrepid Personnel & Provisioning, Inc. and Crowley Maritime Corporation ("Crowley")—and the owners and operators of the ATB Resolve—Vessel Management Service, Inc.; Intrepid Ship Management, Inc.; and Crowley (collectively "Defendants"). Solomon asserts the following causes of action: negligence; unseaworthiness; and maintenance and cure. *See* Dkt. 11 at 3–7.

On August 2, 2019, Defendants moved to dismiss Solomon's suit under Rule 12(b)(2) for lack of personal jurisdiction. Crowley separately moved to dismiss under Rule 12(b)(5) for insufficient service of process.

## PERSONAL JURISDICTION

A motion to dismiss pursuant to Rule 12(b)(2) asserts that the district court lacks personal jurisdiction over one or more defendants. *See* FED. R. CIV. P. 12(b)(2).

> As the party seeking to invoke the power of the court, [Solomon] bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence. In determining whether a *prima facie* case exists, [I] must accept as true [Solomon's] uncontroverted allegations, and resolve in [her] favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation.

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219–20 (5th Cir. 2012) (internal quotation marks, brackets, and citations omitted).

"Generally, a federal court may assert personal jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due

2

process." *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). "Thus, to establish a prima facie case of personal jurisdiction, [Solomon] must show that [Defendants] had minimum contacts with Texas—meaning that [Defendants] purposely availed [themselves] of Texas's benefits and protections—and that exercising jurisdiction will not offend traditional notions of fair play and substantial justice." *Conn Appliances, Inc.*, 936 F.3d at 347 (internal quotation marks, brackets, and citation omitted).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). "Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Halliburton Energy Servs., Inc.*, 921 F.3d at 539–40 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)). In other words, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1781 (2017) (internal quotation marks, brackets, and citation omitted).

General jurisdiction, in contrast, does not require a relationship between Solomon's causes of action and Texas. Instead, for me to take general jurisdiction over claims against Defendants, "[Solomon] must show that [Defendants'] 'affiliations with [Texas] are so continuous and systematic as to render [them] essentially at home in [Texas].'" *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at *2 (S.D. Tex. June 22, 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). "A corporate defendant's place of incorporation and principal place of business are the 'paradigm forums' for where it is 'at home,' and though a defendant may be at home in additional forums, such a forum is an 'exceptional case.'" *Chicky Tackle, LLC v. Vallentine*, No. 6:18-CV-00063-RWS, 2018 WL 4286186, at *2 (E.D. Tex. Sept. 7, 2018) (quoting *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)). "It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

A. SPECIFIC JURISDICTION

I first consider whether Solomon can invoke the rules governing the exercise of specific jurisdiction in this case. As discussed above, an essential requirement for specific jurisdiction is that Solomon's claims arise out of or relate to Defendants' activities in Texas. *See Halliburton*, 921 F.3d at 539–40.

Here, Solomon's suit arises out of her unfortunate fall aboard the ATB Resolve in the navigable waters near the coast of South Carolina. Nothing in Solomon's pleadings suggest that Defendants' activities in Texas were the cause of her fall and injury. In fact,

Solomon's allegations do not even suggest that Texas is in any way connected to her injuries. Nonetheless, Solomon contends that the ATB Resolve "frequently and systematically operated along the Texas coastline" and underwent multiple inspections by the United States Coast Guard while in Texas. Dkt. 26 at 15–16. Solomon argues that these tenuous connections to Texas relate to her unseaworthiness and negligence causes of action. I disagree.

Notably, none of the Coast Guard inspections carried out in Texas concerned the grating that allegedly caused Solomon's fall, nor did any of the inspections concern any unseaworthiness that may have contributed to her injuries.[1] And, again, Solomon suffered her injury off the coast of South Carolina, far from Texas. In my view, this means "all the conduct giving rise to [Solomon's] claims occurred [in South Carolina]. It follows that [Texas] courts cannot claim specific jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1782. Plainly stated, because there is no connection between Texas and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of [Defendants'] unconnected activities in [Texas]." *Id.* at 1781. Courts in the Fifth Circuit have repeatedly recognized this principal by finding that mere incidental connections with a state are insufficient to warrant specific jurisdiction when the incident giving rise to the suit

---

[1] The Coast Guard inspections completed in Texas uncovered several deficiencies with the ATB Resolve's key components, including the propulsion system, generators, ballast system, and other general electrical engineering irregularities. *See* Dkt. 26-6. But none of the deficiencies identified in the inspections relate to the grating that allegedly led to Solomon's injuries in this case. That the Coast Guard uncovered such deficiencies in Texas does not automatically suggest a connection between the inspections and Solomon's causes of action. Importantly, Solomon has failed to offer any allegation demonstrating such a connection.

5

occurred elsewhere. *See, e.g., Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 324 (5th Cir. 1996) (finding no specific jurisdiction in Texas where fatal accident forming the basis of plaintiff's wrongful death cause of action occurred on a highway in Mexico); *Poly Trucking, Inc. v. John R. Reed, Inc.*, No. 3:06-CV-1463-B, 2007 WL 9711743, at *2 (N.D. Tex. Mar. 12, 2007) (finding no specific jurisdiction in Texas where tractor-trailer accident forming the basis of plaintiff's negligence suit occurred in Tennessee); *Lyons v. Swift Transp. Co.*, No. 01-0209, 2001 WL 1153001, at *3 (E.D. La. Sept. 26, 2001) (no specific jurisdiction in Louisiana where train accident occurred in Mississippi). Accordingly, Defendants are not susceptible to specific jurisdiction in this suit. If I have jurisdiction over Defendants, therefore, it must be because Solomon pled a prima facie case for general jurisdiction.

**B.    GENERAL JURISDICTION**

Solomon contends that I have "general jurisdiction over Defendants because of the continuous and systematic nature of the contacts between Defendants and the state of Texas." Dkt. 26 at 13. She argues that "[e]ven if the Defendants are not incorporated in Texas and their principal place of business is outside of Texas, this is an exceptional case that warrants general jurisdiction because [their] contacts with Texas are so systematic so as to render [them] at home here." *Id.* at 13–14. In support of this bold argument, Solomon contends that these facts make this an exceptional case:

- Crowley maintains a place of business in Houston, Texas for project logistics and global freight management operations;
- Crowley's sailing routes encompass the Texas coastline and Gulf of Mexico;

- Defendants have previously sought the protection of this Court when the ATB Resolve sustained damage in a collision that took place in the Southern District of Texas;

- The ATB Resolve has continuously operated in Texas City and Galveston, Texas; and

- The ATB Resolve has undergone vessel inspections in Texas and has been involved in several incidents involving marine casualties or property damage in this state.

*See id.* at 14.

I find that Solomon's proffered facts miss the mark and fall woefully short of demonstrating that I may exercise general jurisdiction over Defendants. As explained above, the Supreme Court has made clear that corporate defendants are considered "at home" in their place of incorporation and principal place of business. *See BNSF Ry. Co.*, 137 S. Ct. at 1558. In the Motion to Dismiss, Defendants attached an affidavit attesting that "they [we]re organized under the laws of the State of Delaware, with their respective principle [sic] places of business in Jacksonville, Florida." Dkt. 19 at 22. Solomon offers no evidence to rebut Defendants' affidavit. Instead, Solomon asserts that Florida is not every defendant's principal place of business because some of them have not registered their business with the Florida Secretary of State. *See* Dkt. 26 at 9. This factual contention, even if true, is irrelevant. The Supreme Court has explicitly held that a corporation's principal place of business is its "nerve center," which is defined as "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). A corporation's registration with a secretary of state is simply not dispositive on the issue of determining its nerve center. *See Good*

*River Farms, LP v. TXI Operations, LP*, No. 1:17-CV-1117-RP, 2018 WL 1770494, at \*2 (W.D. Tex. Apr. 12, 2018) (holding that although a corporation registered with the Texas Secretary of State and provided a Texas office address, its nerve center was nonetheless located in North Carolina). I find, therefore, that Defendants are at home in the paradigm forums of Delaware and Florida. *See Chicky Tackle*, 2018 WL 4286186, at \*2.

Moreover, Solomon's factual allegations related to Defendants' contacts with Texas do not rise to a level the Supreme Court would deem an exceptional case where Defendants are "at home" in a forum other than the paradigm forums of Delaware and Florida. *See, e.g., id.* For example, in *Daimler*, the Supreme Court held that a defendant's revenue of $2.4 billion in California was insufficient for the entity to be "at home" in the state when it was not incorporated in, and did not maintain a principal place of business in, the state. *See* 571 U.S. at 139. Similarly, in *Bristol-Myers*, the Supreme Court noted with approval that the lower court unanimously found general jurisdiction lacking over an entity with more than $900 million in revenues in the particular state. *See* 137 S. Ct. at 1778. Indeed, the only case cited with approval by the Supreme Court since 2011 in which general jurisdiction was found outside a company's place of incorporation and principal place of business involved wartime temporary relocation of a defendant's headquarters. *See Daimler*, 571 U.S. at 138, n.19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). *See also Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 235 (5th Cir. 2016) ("The Supreme Court has found a sufficient basis for the exercise of general jurisdiction over a non-resident defendant in only one modern case—*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)."). Obviously, such circumstances do not exist here. Consequently,

I find that there are no allegations justifying the exercise of general personal jurisdiction over Defendants.

## IMPROPER SERVICE

Although Crowley has also moved to dismiss Solomon's claims against it under Rule 12(b)(5) for insufficient service of process, Rule 12(b)(2) alone provides a sufficient basis for dismissal. Because I do not have personal jurisdiction over Crowley, its Rule 12(b)(5) motion is moot. *See Hageman v. Corporación EG, S.A. de C.V.*, No. SA:14–CV–976–DAE, 2015 WL 1510009, at *12 (W.D.Tex. Mar. 31, 2015) (finding defendant's Rule 12(b)(5) motion moot where court lacked personal jurisdiction); *Duru v. Berkshire Hathaway Home Servs.*, No. 3:15-CV-324-L, 2015 WL 9872539, at *2 (N.D. Tex. Nov. 25, 2015) ("Although Kaiser has moved to dismiss Duru's claims against it under . . . Rules . . . 12(b)(2), 12(b)(5), and 12(b)(6), Rule 12(b)(2) alone provides a sufficient basis for dismissal.").

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Motion to Dismiss (Dkt. 19) be **GRANTED**

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 17th day of October, 2019.

                                                          _____
                                                          ANDREW M. EDISON
                                                          UNITED STATES MAGISTRATE JUDGE